

RECEIVED
FEB 25 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY:

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

| | |
|---|---|
| FARMERS SEAFOOD CO., INC. | CIVIL ACTION NO. 13-1175 |
| versus | JUDGE TOM STAGG |
| FFE TRANSPORTATION SERVICES, INC. | |

## MEMORANDUM RULING

Before the court are cross-motions for summary judgment filed by plaintiff Farmers Seafood Co., Inc., ("Farmers"), and defendant FFE Transportation Services, Inc. ("FFE"). See Record Documents 14 and 17. For the reasons set forth below, both of the motions for summary judgment are **DENIED**.

## I. BACKGROUND

Farmers contracted with FFE to ship a pallet of pasteurized, cooked claw crabmeat from Farmers' facility in Shreveport, Louisiana, to Ipswich Shellfish Company, Inc. ("Ipswich"), located in Ipswitch, Massachusetts. The pallet contained 250 cases of crabmeat with six one-pound cans in each case, for a total of 1,500 cans weighing 1,500 pounds. FFE picked up the crabmeat at Farmers' Shreveport facility on February 14, 2013. The agreement between Farmers and FFE was formalized in

a Bill of Lading. See Record Document 14, Declaration of Paul Britvich, Ex. A. The Bill of Lading noted that the crabmeat must be kept between thirty-three and thirty-eight degrees. See id.

Farmers alleges that Ipswitch required proof of temperature during transit. Farmers claims that Ipswitch required that a temperature control recorder ("TCR") be attached to the crabmeat pallet. Ipswitch would then download temperature data from the TCR upon delivery. Moreover, Farmers alleges that when FFE driver Claydron Stinnett ("Stinnett") picked up the shipment, Heather Randolph ("Randolph"), a Farmers inventory clerk, attached the TCR to the pallet in Stinnett's presence and told Stinnett that the TCR must stay attached during transit until delivery or Ipswitch would reject the shipment. See Record Document 17, Affidavit of Heather Alford Randolph. FFE denies these allegations. Stinnett stated that he knew a device, which he believed was a temperature recorder, was attached to the shipment by a Farmers employee but that no one told him what the device was or that the delivery would be rejected if the device was not attached upon delivery. See Record Document 19, Declaration of Claydron R. Stinnett. Additionally, Farmers alleges that after Clark attached the TCR to the pallet, she wrote the TCR's serial number, 69041540, on the Bill of Lading. There is a handwritten notation, which reads "Temp # 69041540," on the Bill of Lading in the same section containing the temperature maintenance

2

requirement. See Record Document 14, Declaration of Paul Britvich, Ex. A.

Once the shipment was loaded on February 14, it was transported to FFE's refrigerated warehouse in Lancaster, Texas, which is approximately three hours from Shreveport. It is undisputed that there is no data that can verify the shipment remained between thirty-three and thirty-eight degrees during the trip from Shreveport to Lancaster. However, FFE has submitted data purporting to show that the temperature requirements were met from the time the shipment arrived in Lancaster at approximately 1:15 a.m. on February 15 until it was delivered to Ipswitch's facility on February 18. See Record Document 14, Declaration of Paul Britvich, Ex. B. Ipswitch rejected the delivery because the TCR could not be located. Moreover, Ipswitch refused to pay Farmers for the crabmeat.

Thereafter, FFE attempted to return the shipment to Farmers. Farmers informed FFE that it would only take the shipment back if FFE could prove that, at all times, the shipment's temperature was between thirty-three and thirty-eight degrees. Because FFE does not have any records documenting the temperature for the trip from Farmers' Shreveport facility to FFE's Lancaster warehouse, Farmers refused to accept return of the shipment. Farmers subsequently filed a claim with FFE for an alleged loss of $13,035.08, consisting of the $12,525.00 sales price to Ipswitch and $510.08 in freight charges from FFE. FFE refused to reimburse Farmers

for the losses. FFE also had samples from the shipment tested by Analytical Food Laboratories. The results showed the samples were in good condition and had no evidence of contamination.

On April 25, 2013, Farmers filed the instant suit against FFE in Louisiana state court. FFE removed the case to this court on May 23, 2013. See Record Document 1. Thereafter, FFE filed its motion for summary judgment. See Record Document 14. Farmers filed an opposition to FFE's motion as well as its own motion for summary judgment. See Record Documents 16 and 17. FFE filed an opposition to Farmers' motion and Farmers filed a reply. See Record Documents 19 and 20.

## II. LAW AND ANALYSIS

### A.  Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant

demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     The Carmack Amendment.**

The parties agree that the law applicable to the claims that Farmers asserts against FFE is the Carmack Amendment, 49 U.S.C. § 14706. The Carmack Amendment requires carriers providing transportation services, such as FFE, to issue a bill of lading or other receipt for any property it transports across state lines. See 49 U.S.C. § 14706. Further, the Carmack Amendment makes the carrier liable for any "actual loss or injury to the property" caused by the carrier's actions. See id. The Carmack Amendment codified the common-law doctrine that a carrier is liable for all damages to transported goods, with limited exceptions. See Missouri Pac. R.R. Co.

v. Elmore & Stahl, 377 U.S. 134, 137, 84 S. Ct. 1142, 1144 (1964).

To set out a prima facie claim under the Carmack Amendment, a shipper must demonstrate three things: 1) delivery of the goods to the carrier in good condition; 2) receipt by the consignee of lost or damaged goods; and 3) the amount of damages. See id. at 138, 84 S. Ct. at 1145; Man Roland, Inc. v. Kreitz Motor Express, Inc., 438 F.3d 476, 479 (5th Cir. 2006). If the shipper can prove these three things, a presumption of negligence attaches to the carrier. See Man Roland, Inc., 438 F.3d at 479. The burden then shifts to the carrier to show both that the carrier was not negligent and that the damage was attributable to the inherent nature of the good itself or caused by an act of God, public enemy, the shipper, or public authority. See Missouri Pac. R.R. Co., 377 U.S. at 138, 84 S. Ct. at 1145; Man Roland, Inc., 438 F.3d at 479. Farmers appears to have delivered the crabmeat to FFE in good condition, and FFE has not argued otherwise. Thus, this court's analysis will begin with the second element—proof that the goods were damaged or lost.

Farmers argues the goods were damaged upon delivery to the consignee, Ipswitch, because the TCR was missing. Specifically, Farmers claims the loss of the TCR made it impossible to verify that the crabmeat had been stored at the required temperature, thus making it no longer safely marketable. In support of its motion, Farmers provided affidavits from a Farmers manager, Gus S. Mijalis, and an Ipswitch

manager, Robert James Butcher. Both managers stated that selling the crabmeat without proof of proper temperature maintenance could expose both companies to civil or criminal liability. See Record Document 17, Affidavit of Gus S. Mijalis and Affidavit of Robert James Butcher. Moreover, Farmers argues that FFE's failure to deliver the shipment with the TCR attached is tantamount to a non-delivery of the goods.

FFE argues the loss of the TCR is irrelevant because delivery of the TCR was not a condition of the Bill of Lading. Additionally, FFE argues that any statements made to its driver that the TCR needed to be delivered to Ipswitch are inadmissible under the parol evidence rule. The parol evidence rule excludes evidence seeking to vary or alter the terms of a written contract. See Conkling v. Turner, 18 F.3d 1285, 1304 (5th Cir. 1994). Bills of lading are subject to the parol evidence rule. See Searoad Shipping Co. v. E.I. duPont de Nemours & Co., 361 F.2d 833, 838 (5th Cir. 1966); The Pelotas, 66 F.2d 75, 78 (5th Cir. 1933). However, if the terms of a written contract are ambiguous, parol evidence can be admitted to determine the parties' intent. See Am. Elec. Power Co. Inc. v. Affiliated FM Ins. Co., 556 F.3d 282, 286 (5th Cir. 2009); Yiannopoulos, 4 La. Civ. Law Treatise, Predial Servitudes § 128 (3d ed.). "The determination of whether a contract is clear or ambiguous is a question of law." Sims v. Mulhearn Funeral Home, Inc., 956 So. 2d 583, 590 (La. 2007).

The court finds the Bill of Lading is ambiguous. Specifically, the Bill of Lading is ambiguous because of the handwritten notation of the TCR's number. This notation is located in the section for the shipper to describe the goods being shipped and any special requirements. A fact finder could reasonably conclude that this notation made delivery of the TCR a condition of the Bill of Lading or mandated that the TCR be used in connection with the temperature maintenance requirement listed in the same section of the Bill of Lading. The parol evidence rule is therefore inapplicable and the evidence regarding the statements of Farmers' employee, Clark, to FFE's driver, Stinnett, is admissible.

Returning to the question of whether the shipment was damaged, the court finds there is a genuine issue of material fact as to this issue. As explained above, delivery of the TCR may have been required under the Bill of Lading. Both parties have produced affidavits from witnesses presenting evidence supporting or undermining this conclusion. Due to the ambiguity in the Bill of Lading itself, all such evidence is admissible to determine the parties' intent. Assuming that delivery of the TCR was required, the absence of the TCR would make FFE liable for at least the value of the TCR itself and possibly for the entire shipment of crabmeat. Because there is exists a genuine issue of material fact to an essential element of Farmers' claim, neither party is entitled to judgment as a matter of law.

## III. CONCLUSION

For the foregoing reasons, both FFE's motion for summary judgment and Farmers' motion for summary judgment are **DENIED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana this 25 day of ~~March,~~ Feb. 2014.

_____
for JUDGE TOM STAGG